No. 89-100

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

IN RE THE MARRIAGE OF:

SHARON DARLENE GEBHARDT,

      Petitioner and Respondent,

and

LeROY GEBHARDT,

      Respondent and Appellant.

'89 DEC 5 PM 1 29
FILED
ED SMITH, CLERK
MONTANA SUPREME COURT

APPEAL FROM:  District Court of the Fourth Judicial District
In and for the County of Missoula
The Honorable James G. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Richard A. Reep, Graham & Reep, Missoula, Montana

    For Respondent:

        Jon E. Ellingson, Ellingson & Moe, Missoula, Montana

Submitted on Briefs: September 21, 1989

Decided:  December 5, 1989

Filed:

Clerk

Justice Diane G. Barz delivered the Opinion of the Court.

LeRoy Gebhardt (LeRoy) appeals from a Decree of Dissolution entered in the District Court of the Fourth Judicial District, Missoula County, Montana, the Honorable James B. Wheelis presiding. We affirm in part, reverse in part and remand.

LeRoy and Sharon Gebhardt (Sharon) were married on October 7, 1967, in Seattle, Washington. LeRoy completed his Ph.d in Mechanical Civil Engineering shortly before the marriage of the parties. Sharon's education consisted of two years of college and a two-year x-ray technology course. Immediately after the marriage, the parties moved to California where LeRoy worked first for TRW and later for Agbabian & Associates. At the time of separation, Sharon had worked outside the home as an x-ray technician for a total of twelve days.

Six children were born to LeRoy and Sharon: Connie in 1968, Chris in 1970, Theresa in 1971, Beth in 1975, JoAnna in 1977, and Jennifer in 1981. Both Connie and Chris were emancipated at the time of trial. In 1978, the parties moved from California to a farm in Ronan, Montana. The purpose of the move was to enhance the family life and provide more interaction between LeRoy and the children. The parties' primary source of income from 1978 until the present was a California trailer park purchased as an investment in 1969. LeRoy did the original investigation of the property and has overseen its management almost exclusively.

In 1974, LeRoy established an irrevocable trust for the benefit of his children. The primary source of the trust corpus was an inheritance from LeRoy's mother, although LeRoy contributed certain other inheritances and income, and LeRoy's brother, Guy, made contributions as well. Guy

2

Gebhardt is the trustee for the benefit of the children. The trust expires when the youngest child reaches twenty-five.

In 1984, Sharon and the children moved to Missoula so that the children, each of whom had experienced some degree of academic difficulty, could attend school there. The parties then purchased a home on Mount Avenue in Missoula. On July 16, 1986, Sharon filed for dissolution. The assets owned by the parties at that time included: the farm and related assets in Ronan, the Mount home, the California trailer park, a Franklin Fund account and personal property. The farm, the trailer park and the home were all encumbered by outstanding debt. By stipulation dated September 4, 1986, the parties agreed to an equal division of both the Franklin Fund account and the proceeds of the sale of the farm assets as well as to a division of the trailer park income. The only assets not disposed of by this agreement were the Mount home and the parties' personal property. Both parties acquired certain assets between the time of filing and dissolution. In particular, LeRoy purchased a home encumbered by a mortgage.

On May 2, 1988, LeRoy and Sharon entered into an Agreement for Partial Settlement of Marital Estate. Pursuant to that agreement, LeRoy executed a promissory note in favor of Sharon as partial consideration for her share of the Ronan farm and its remaining assets. LeRoy also agreed to indemnify Sharon for any liability on the underlying contract for deed.

Sharon testified as to eight incidents of LeRoy's abuse of either her or the children. Sharon's and LeRoy's testimony conflicted as to who instigated separate confrontations involving LeRoy and Sharon and LeRoy and Chris. Both parties agreed that corporal punishment was an acceptable form of discipline.

3

LeRoy's specifications of error fall into three categories:

1. The District Court abused its discretion by its wholesale adoption of Sharon's Findings of Fact and Conclusions of Law in light of the lack of substantial, credible supporting evidence.

2. The District Court failed to consider statutory factors.

3. The District Court exceeded its jurisdiction in ordering the parties to prevail upon the assets of the LeRoy Gebhardt Trust for payment of the children's medical and dental expenses.

The findings of the District Court are presumed correct. In re the Marriage of Johnson (1987), 225 Mont. 404, 405-06, 732 P.2d 1345, 1346. We will not reverse the District Court's ruling absent an abuse of discretion. In re the Marriage of Johns (Mont. 1989), 776 P.2d 839, 840, 46 St.Rep. 1249, 1251; In re the Marriage of Stephenson (Mont. 1989), 772 P.2d 846, 848, 46 St.Rep. 700, 702. Although we have consistently encouraged district courts to employ conscientious judgment and active participation in preparing findings, adoption verbatim of one party's proposed findings is not error per se. In re the Marriage of Watson (1987), 227 Mont. 383, 387-88, 739 P.2d 951, 954; In re the Marriage of Sessions (Mont. 1988), 753 P.2d 1306, 1307, 45 St.Rep. 744, 746. Reversible error exists only where substantial credible supporting evidence is lacking. In re the Marriage of Stewart (Mont. 1988), 757 P.2d 765, 767, 45 St.Rep. 850, 852. Neither is the District Court required to make specific findings related to each statutory factor set forth in either §§ 40-4-202 or 40-4-204, MCA. In re the Marriage of Reid (1987), 226 Mont. 116, 120, 733 P.2d 1302, 1304. However, the findings must clearly reflect consideration of these

4

factors. In re the Marriage of Syljuberget (Mont. 1988), 763 P.2d 323, 326, 45 St.Rep. 1825, 1828. LeRoy asserts that the District Court made incredible findings and failed to consider statutory factors in its division of marital property, establishment of child support and visitation. We will address each area separately.

## Marital Property

LeRoy first contends that the District Court failed to consider certain of his obligations in apportioning the marital estate and thus effected an inequitable division. The debts at issue are as follows:

| | |
|---|---|
| Note to Sharon Gebhardt (Ranch) | $17,404.26 |
| Contract for Deed to MacGillivary (Ranch) | 65,191.49 |
| Home Loan | 42,165.00 |
| Personal Loan -- Guy Gebhardt | 16,000.00 |
| Ranch Taxes & Water Assessment | 4,241.81 |
| 1988 Income Tax -- Estimate | 3,054.00 |
| TOTAL | $148,056.56 |

This case is analogous to In re the Marriage of Wagner (1984), 208 Mont. 369, 679 P.2d 753. Husband and wife in Wagner divided their marital assets and embarked upon divergent financial paths. Wagner, 679 P.2d at 755. Wife aggressively pursued development of her ranch assets while husband proceeded to divest himself of certain property and to encumber substantially all that remained. Wagner, 679 P.2d at 755. We held in Wagner that:

> To include in the valuation of the marital estate any accumulation of financial wealth or, conversely, the increase in financial liabilities of either spouse subsequent to the termination of the "marital relationship" may effectuate an injustice and frustrate the intended purpose of division of marital property.

5

Wagner, 679 P.2d at 757-58.

LeRoy's first three listed liabilities were incurred subsequent to the filing of the petition and the parties' "financial" separation. The terms of the parties' Agreement for Partial Settlement of Marital Estate required LeRoy to execute a promissory note payable to Sharon as consideration for her interest in the ranch. LeRoy's separately incurred obligation represented by the note is thus not a marital debt. Similarly, pursuant to the same Agreement, LeRoy agreed to indemnify Sharon both for any amount she becomes obligated to pay pursuant to the MacGillivary contract for deed and for any liability related to ranch taxes and irrigation fees. LeRoy assumed liability for all three debts as part of his resolution to hold the farm property and render it profitable. Sharon should not be penalized for LeRoy's investment decisions once their paths diverged in regard to financial matters. These debts are therefore not marital obligations subject to division. By his own testimony, LeRoy purchased a home on North Avenue with proceeds from the sale of the farm assets after the parties stipulated to equally distribute the farm sale proceeds. The record is unclear as to the origin of the debt to Guy Gebhardt and the 1988 Estimated Taxes. We remand for further proceedings regarding the nature and timing of these obligations and disposition consistent with our determinations above.

Secondly, LeRoy asserts as error the District Court's award of all the equity in the Mount home and the personal property to Sharon despite its equal division of other, more significant assets. Section 40-4-202, MCA, mandates an equitable apportionment of marital property. Equitable does not necessarily mean equal. In re the Marriage of Fitzmorris (Mont. 1987), 745 P.2d 353, 354, 44 St.Rep. 1809, 1811. We

6

will not reverse the district court absent an abuse of discretion. In re the Marriage of Stewart (Mont. 1988), 757 P.2d 765, 767, 45 St.Rep. 850, 852. We do not find an abuse of discretion in the District Court's award of the Mount home and its contents in light of Sharon's custody of the four minor children. We affirm.

Thirdly, LeRoy specifies as error the District Court's order which he claims divests both parties of substantially all control over the California trailer park. The District Court found that "[n]either party should manage the trailer park except as a short term interim manager between hired managers." We find the District Court's order lacked sufficient, credible supporting evidence. Substantial credible evidence will persuade a reasonable person and should be of such a character that reasonable persons would not disagree as to its meaning. Kukuchka v. Ziemet (1985), 219 Mont. 155, 157-58, 710 P.2d 1361, 1363. We are not convinced that LeRoy's past management of the trailer park warrants his complete exclusion from the same in the future. Under LeRoy's supervision, this investment increased in value from $120,000 to $700,000 over a nineteen year period. The Gebhardt family has relied on this asset for its support since 1978. No evidence supports the District Court's conclusion that LeRoy should not continue to oversee the management of the trailer court. The lower court's order that the parties relinquish hands-on control of this singularly important asset is clearly an abuse of discretion. We remand for additional proceedings and redetermination of management of the trailer park during the period the parties hold the same as co-tenants.

Child Support

7

LeRoy claims the District Court improperly imputed excessive income to him and minimal income to Sharon in establishing the child support obligations of both parties. Furthermore, he asserts the District Court failed to consider statutory factors in its award of child support.

The District Court imputed income to LeRoy of $40,000 per year based solely on LeRoy's testimony that he supposed his salary would have doubled had he remained in California and the speculation of LeRoy's former co-worker that LeRoy could probably find a job in the aerospace industry. Additionally, the lower court found Sharon capable of earning barely over $3,000 per year.

We stated upon adopting the Uniform Child Support Guidelines that District Courts may properly impute income to under-employed or unemployed parents. Uniform District Court Rule on Child Support Guidelines (Mont. 1987), 44 St.Rep. 828. However,

> In cases where the obligor parent is not working or is not working at full earning capacity, the reasons for such a limitation on earnings should be examined. If the reason is a matter of choice, the local job market should be reviewed to determine what a person with the obligor parent's trade skills and capabilities could earn. Those typical earnings can then be imputed to the obligor parent for use in this guide. This approach is most useful when the obligor parent has a relatively stable and recent work history. The approach can also be used when the obligor parent has minimal skills and no work history by ascribing earnings based on a minimum wage for a full work week.

Uniform District Court Rule on Child Support Guidelines, 44 St.Rep. at 833.

District Courts are obliged to consider the employment opportunities available in the local job market for unemployed or under-employed parents. The record does not reflect the District Court's consideration of local employment opportunities in imputing income to either of the parties. Sharon's income was established at approximately $3,000 per year with only her previous year's earnings as support for that finding. The court imputed $40,000 of income to LeRoy based only on his conjecture that had he remained in California, his salary might have doubled. Obviously, LeRoy did not remain in California. The findings of the trial court "[m]ust realistically reflect what the parents are capable of earning using their actual earnings as a guideline." In re the Marriage of Mitchell (Mont. 1987), 746 P.2d 598, 602, 44 St.Rep. 1936, 1941, (quoting In re the Marriage of Carlson (1984), 214 Mont. 209, 216, 693 P.2d 496, 500). Neither LeRoy's nor Sharon's earning capacity was realistically reflected in the District Court's findings due to the lack of sufficient supporting evidence.

Adequate consideration of statutory factors is absent in the District Court's findings as well. We find no indication that the lower court considered the needs of the children, their lifestyle prior to dissolution or LeRoy's financial resources. In re the Marriage of Anderson (Mont. 1988), 748 P.2d 469, 471, 45 St.Rep. 40, 43. We remand for a calculation of both parties' child support obligation based on a reasonable imputation of income and in light of the statutory considerations set forth above.

LeRoy also specifies as error the District Court's award of retroactive child support. The District Court may, once the issue of child support is properly before it, award retroactive child support. In re the Marriage of Shirilla (1987), 225 Mont. 106, 110, 732 P.2d 397, 399; In re the

9

Marriage of DiPasquale (1986), 220 Mont. 497, 499, 716 P.2d 223, 225. Because the District Court abused its discretion in its imputation of income to both parties, the award of retroactive child support based on that calculation is error. Sharon did not seek modification of the parties' stipulation during the pendency of this action and only raised the issue of retroactive child support upon filing her Proposed Findings of Fact and Conclusions of Law. There was no testimony to support such an award. In light of the above, we remand for redetermination of the propriety of retroactive child support based on both parties' actual and reasonably imputed income.

Visitation

LeRoy contends the District Court erred by imposing limitations on his visitation with his two youngest children. We agree. Section 40-4-217, MCA (1987), states that "a parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health." While portions of Sharon's proposed findings, adopted verbatim by the District Court, were self-serving beyond the point of advocacy, nowhere is there reflected a potential for serious endangerment. "Error occurs only when the proposed findings are relied upon to the exclusion of proper consideration of the facts and the failure to exercise independent judgment." In re the Marriage of Jacobsen (Mont. 1987), 743 P.2d 1025, 1029, 44 St.Rep. 1678, 1683.

The District Court ordered:

> Summer visitation of six weeks on the condition that [LeRoy] employs a responsible, live-in adult to provide assistance with care for the children

10

during this period. This adult must be sufficiently independent of [LeRoy] and sufficiently committed to the children to be able to intervene on behalf of the children to interrupt any physical abuse directed at them by [LeRoy]. If [LeRoy] is unwilling to hire such an adult, then he shall have visitation with JoAnna and Jennifer during the summer consisting of two one week periods separated by at least a three week period. Given the age of the children and [LeRoy's] responsibilities on the farm, [LeRoy] shall have the obligation to obtain child care assistance during these visitations.

What the court failed to set forth was any indication of LeRoy's ability to meet this potentially onerous financial burden which appears to foreclose any summer visitation. The District Court did not employ its independent judgment and abused its discretion by making findings not based on substantial, credible evidence. In re the Marriage of J.A.M. & D.A.M. (Mont. 1988), 750 P.2d 1097, 1099, 45 St.Rep. 437, 440. We reverse and remand for further determination of a reasonable visitation schedule.

LeRoy Gebhardt Trust

The District Court, in Conclusion of Law No. 11, ordered the parties to prevail upon the trustee of the LeRoy Gebhardt Trust for payment of "medical insurance and expenses for the children including dental and ocular expenses and any extraordinary expenses . . ."

The LeRoy Gebhardt Trust is an irrevocable trust created for the benefit of the children of LeRoy and Sharon Gebhardt. During the trust term, the trustee may "distribute to or for the benefit of Trustor's [LeRoy's] children . . . such amount or amounts of income or principal as Trustee in his sole discretion deems to be necessary for the health,

11

education and maintenance of the beneficiaries." LeRoy's clear intention was to create an irrevocable trust for the benefit of his children. Thus, the LeRoy Gebhardt Trust is not marital property and the District Court erred in attempting to dispose of it as such. In re the Marriage of Malquist (Mont. 1988), 763 P.2d 1116, 1119, 45 St.Rep. 2020, 2023-24.

We reverse the order of the District Court and remand for further proceedings regarding the parties' responsibility for the medical and dental insurance needs of their children consistent with this opinion.

Affirmed in part, reversed in part and remanded.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices