No. 92-081

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF
AILEEN D. SCOTT,

      Petitioner and Appellant,

  and

CARL D. SCOTT,

      Respondent and Respondent.

FILED

JUL 2 1 1992

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Paul Neal Cooley, Skelton & Cooley, Missoula,
Montana

    For Respondent:

        Jeffrey H. Langton, Attorney at Law, Hamilton,
Montana

Submitted on Briefs:  June 11, 1992

Decided:  July 21, 1992

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

The marriage of Aileen Scott (Aileen) and Carl Scott (Carl) was dissolved in the Fourth Judicial District, Missoula County, Montana. The District Court entered the Final Decree of Dissolution on August 5, 1991, which divided the property of the parties and made no provision for maintenance. Aileen moved the court to amend the decree and filed a motion for a new trial. The District Court denied both motions and Aileen appeals. We affirm.

The parties were married on December 14, 1979 in Missoula, Montana and the marriage lasted over eleven years. Both parties had previously been married and had children from those relationships. They had no children from their marriage to each other. Prior to the marriage Aileen was employed by Safeco Title Insurance Company as an office worker. She was educated through the eighth grade and completed two years of a business school program. Carl, who never progressed beyond the ninth grade, became quite successful by buying land and constructing houses, some of which he sold on contract. After complications with his arm in 1977, Carl ceased construction activities and lived off his investments. About that time, Carl established a horse trading business and owned several mares.

Carl entered the marriage with an approximate net worth of over $500,000 and Aileen approximately $18,000. In 1980, shortly after the parties married, they established a horse racing operation starting with the horses Carl owned prior to the marriage. The couple devoted their full attention to this venture

2

throughout the course of their marriage. The horse racing business included racing, breeding, raising, and training of race horses. Carl managed the business aspects of the operation while Aileen became a licensed horse trainer and trained the horses they owned. Aileen also traveled to the race locations and dealt with the operation from that end.

The couple first lived in St. Ignatius, Montana, until moving to Ellensburg, Washington in 1982. Sometime in 1983, Carl purchased property at Lake Lenore, Washington and in July 1989, the parties moved to Corvallis, Montana. The parties were unsuccessful in making the horse racing business profitable and sustained losses totaling over $230,000 between 1981 and 1990.

The parties lived apart for over a year when, in April 1990, Aileen departed for Canada to run horses. In late May, Aileen received a substantial inheritance after the death of her mother consisting of approximately $100,000 in cash and 392 acres of real property near Butte, Montana. In early June, Carl asked Aileen not to return to the family home even though the parties had lived separately for over a year. Aileen initiated dissolution proceedings and was granted temporary maintenance of $1,000 per month which was later reduced to $500 per month.

Trial was held on June 25 and 26, 1991, and on July 20, 1991 the District Court entered Findings of Fact, Conclusions of Law and Order. On August 5, 1991 the District Court entered the Final Decree of Dissolution which distributed the assets of the parties and eliminated all maintenance to Aileen. On August 20, 1991,

3

Aileen filed a motion to amend the final decree as well as a motion for a new trial. The District Court denied both motions on October 1, 1991 and Aileen now appeals to this Court.

This Court's recent opinion of In Re Marriage of Danelson (Mont. 1992), No. 91-255, decided July 9, 1992, stated:

> This Court has recently clarified that our standard of review in regard to the factual findings of the district court relating to the division of marital property is whether the district court's findings are clearly erroneous. In re Marriage of Sacry (Mont. 1992), 49 St.Rep. 452. Concerning this Court's review of conclusions of law made by a lower court we have stated that "[w]e are not bound by the lower court's conclusions and remain free to reach our own." Schaub v. Vita Rich Dairy (1989), 236 Mont. 389, 391, 770 P.2d 522, 523. The basis for simply determining if the lower court's conclusions are correct is that there is no discretion in determining a question of law. The lower court either correctly or incorrectly applies the law. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 803 P.2d 601.
>
> In adopting these standards of review in division of marital property cases, this Court is not in any way discounting the considerable discretionary power that must be exercised by district courts in these cases. The courts are obligated to fashion a distribution which is equitable to each party under the circumstances. In re Marriage of Jones (1987), 229 Mont. 128, 745 P.2d 350; § 40-4-202, MCA. The courts, working in equity, must seek a fair distribution of the marital property using reasonable judgment and relying on common sense. Obtaining this equitable distribution will at times require the lower court to engage in discretionary action which cannot be accurately categorized as either a finding of fact or a conclusion of law. These discretionary judgments made by the trial court are presumed to be correct and will not be disturbed by this Court absent an abuse of discretion by the lower court. Meridian Minerals v. Nicor Minerals, Inc. (1987), 228 Mont. 274, 742 P.2d 456.

Danelson, Slip Op. at 8-9.

Aileen alleges numerous errors at the District Court level all related to property distribution and maintenance which can be

4

combined into the following dispositive issue:  Did the District Court err in dividing the marital estate and in not providing for maintenance to Aileen.

PROPERTY DISTRIBUTION

Section 40-4-202, MCA sets forth the criteria for the division of property in a dissolution proceeding as follows:

> In a proceeding for dissolution of a marriage . . . the court, without regard to marital misconduct, shall, . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both.  In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; . . . whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income.

Section 40-4-202(1), MCA.

In making property distribution we conclude that the District Court did take into consideration the items found in § 40-4-202(1), MCA.  For instance, the court acknowledged the age of the parties and the eleven-and-one-half year duration of the marriage.  The court also addressed the employability of the parties and their vocational skills by stating that Carl had not worked in construction for the last seventeen years while Aileen was an experienced horse trainer.  Further, the court indicated that, with training, Aileen could return to work in an office position.  Similarly, the District Court addressed the other items contained in the statute and the record supports each finding.

Section 40-4-202(1), MCA, also addresses property division

5

with regard to property acquired prior to the marriage relationship as follows:

> In dividing property acquired prior to the marriage; property acquired by gift, bequest, devise, or descent; property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise, or descent; the increased value of property acquired prior to marriage; and property acquired by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including:
>
> (a) the nonmonetary contribution of a homemaker;
>
> (b) the extent to which such contributions have facilitated the maintenance of this property; and
>
> (c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202(1), MCA. The record reflects that Carl owned substantial assets prior to his marriage to Aileen. He entered the marriage with extensive investments resulting from his efforts as a contractor totalling approximately $500,000. Even the horses that comprised the beginning of the couple's horse racing venture were bought and paid for by Carl prior to the marriage. Aileen entered the marriage with an approximate net worth of $18,000. While Aileen made a contribution as a homemaker, it cannot be said that she made a contribution to maintenance of Carl's pre-marriage property. In fact, the record indicates that Aileen knew virtually nothing about Carl's construction business or his investments as evidenced by Aileen's own testimony:

> Question: Now, you've testified that--repeatedly that Carl was quite secretive about his business affairs?
>
> Aileen:    He was.
>
> Question: Do you have any idea what his net worth was at

6

the date of the marriage?

Aileen: No, he never discussed that with me . . .

Question: Now, did land that Carl owned as of the date of the marriage, did you, yourself, put any money into any of that land?

Aileen: No.

The court also addressed Aileen's inheritance of cash and real property. Aileen objects to the District Court's consideration of her inheritance as part of the marital estate. However, we find, after a close review of the Findings of Fact, that the court was stating that Carl was not entitled to any portion of Aileen's inheritance by listing only the remaining unspent balance of the inheritance in the Findings. The court observed that Aileen had already spent $52,000 of the inheritance and simply clarified that the remaining unspent $48,000 belonged solely to Aileen. Even without the inheritance as a component of the marital estate we conclude that while Aileen may not have received an equal portion of the marital estate, she received an equitable portion according to In re Marriage of Wersland (1991), 249 Mont. 169, 174, 814 P.2d 991, 994; citing In re the Marriage of Fitzmorris (1987), 229 Mont. 96, 745 P.2d 353.

We also mention that Aileen makes much out of the fact that some of the property divided between the parties was located in the state of Washington. She suggests that the property should therefore be divided according to community property standards under Washington law. We do not agree. This Court is not bound by Washington law. The dissolution proceeding was initiated by Aileen

7

in Montana and the proceeding is now subject to adjudication accordingly.

Generally, Aileen objects to the amount she received in the dissolution proceeding based on percentage comparisons that indicate the disproportionate nature of the property division. After reviewing the record it is evident the District Court placed emphasis on the fact that Carl entered the marriage with substantially more than Aileen. Aileen's contribution to the maintenance of Carl's pre-marriage property was minimal, despite the eleven year marriage. Even the assets acquired during the marriage, namely the horse racing operation, was acquired with Carl's pre-marriage funds. The record indicates that the operation almost continuously operated at a loss, therefore, Aileen's efforts in this area did not facilitate the maintenance of the pre-marital property. Section 40-4-202(1), MCA, refers to a spouse's contribution to "the increased value of property acquired prior to marriage," and in the case at bar there has been no such increase, since the horse racing venture lost approximately $231,000 from 1981 to 1990. All these factors were properly reflected in Aileen's award from the dissolution proceeding.

It is well settled in Montana that property division in a dissolution proceeding does not need to be equal but instead must be equitable. In re Marriage of Wersland (1991), 249 Mont. 169, 174, 814 P.2d 991, 994; citing In re the Marriage of Fitzmorris (1987), 229 Mont. 96, 745 P.2d 353.

A review of the record indicates that the District Court

8

properly considered all the components mentioned in § 40-4-202(1), MCA, when dividing the parties' property and assets. Therefore, the District Court did not err in dividing such property.

## MAINTENANCE

An award of maintenance is governed by § 40-4-203(1), MCA, which provides that:

> In a proceeding for dissolution of marriage or legal separation or a proceeding for maintenance following dissolution of the marriage . . . the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
>
> (a) lacks sufficient property to provide for his reasonable needs; and
>
> (b) is unable to support himself through appropriate employment. . . .

Section 40-4-203(1), MCA.

The District Court found that Aileen did not lack sufficient property to provide for her reasonable needs. To that end, we note that Aileen repeatedly stated she was not asking for maintenance and that she felt she could support herself. The court properly considered her inheritance, her statements, her current income and future income potential. Thus, the court did not provide for maintenance.

Aileen also makes much out of the fact that what remains of her inheritance will soon be gone, as she anticipates those funds will go towards covering various costs of stabling her horses, motel bills, travel expenses, feed and other related expenditures. It is her choice to remain dedicated to a losing business

9

proposition and neither the District Court nor Carl can be held responsible for that choice.

We conclude that after considering the requisite elements of § 40-4-203(1), MCA, the District Court properly determined that Aileen was not entitled to maintenance. Failing to meet the threshold questions in § 40-4-203(1), MCA, we need not progress to the standards set forth in § 40-4-203(2)(a) through (f), MCA. In re Marriage of Overturf (Mont. 1992), No. 92-125, decided July 9, 1992, Slip Op. at 5.

After a review of the record in the case at bar, we find that the District Court's division of the marital estate and denial of maintenance was not clearly erroneous. Accordingly, we affirm.

John Conway Harrison
Justice

We concur:

Justices